UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAO XIONG,

        Petitioner,

v.                                            Case No. 11-C-474

UNITED STATES OF AMERICA,

        Respondent.

## DECISION AND ORDER

On May 18, 2011, Petitioner Pao (aka "Danny") Xiong filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction based on his allegations that his trial counsel's representation was ineffective. (ECF No. 1.) This matter is now ripe for disposition as the Government has filed a brief in opposition (ECF No. 12) and Xiong has filed a reply brief. (ECF No. 18.) For the reasons set forth herein, Petitioner's § 2255 motion will be denied.

## BACKGROUND

Petitioner had previously been convicted at trial of arson, mail fraud, witness tampering, and false statement charges. He was sentenced to fifteen years in prison. The charges stem from an arson for profit scheme that included the burning of a grocery store owned and operated by Mayneng Xiong, Petitioner's mother, who was also charged in the scheme. Prior to Petitioner's trial, Mayneng Xiong pled guilty to mail fraud charges and was sentenced to prison.

Petitioner proceeded to trial and was represented by Attorney Mark Maciolek. The government presented expert witness testimony concerning the fire scene examination, cellular telephone and cellular tower records, and DNA analysis regarding various items recovered at the fire scene and elsewhere. The government also called several citizen witnesses including Xee Vue (Petitioner's girlfriend) who testified concerning Petitioner's whereabouts for some of the evening leading up to discovery of the fire.

Attorney Maciolek countered with his own expert witness testimony concerning DNA evidence and cell tower data. He had consulted with an expert in fire scene analysis but decided not to call him at trial. (ECF No. 12-1.) Attorney Maciolek also called the following citizen witnesses: (1) Sing Xiong, sister of Petitioner, who testified about Hmong traditions and the family members' involvement with her mother's grocery store; (2) Austin Ly, cousin of Petitioner, who testified he cleared the grocery store for a New Year's party by stacking wooden pallets against the wall; (3) Kao Moua, brother-in-law to Petitioner, who testified he wore latex gloves while working on cars; (4) Kaoli Xiong, sister of Petitioner, who assisted with financial matters associated with the grocery store and was unfamiliar with the financial condition of the business; and (5) Kim Xiong, sister of Petitioner, who testified that Petitioner returned to residence shortly before discovery of fire and did not smell like gasoline or smoke.

Petitioner now argues Attorney Maciolek should have proceeded at trial by presenting what Petitioner calls a "truth" defense. (ECF No. 7 at 4.) But as explained in more detail below, Attorney Maciolek pursued a reasonable defense strategy that included some of the so-called "truth" defense and rejected other aspects that were untenable. In light of the evidence of the case,

Maciolek's efforts as Xiong's trial counsel were neither deficient nor prejudicial and he therefore did not provide ineffective assistance of counsel.

### INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Ineffective assistance of counsel, if properly established, may provide a constitutional ground for relief under *Strickland v. Washington*, 466 U.S. 668 (1984). Such an "ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Under *Strickland*, a counsel's performance must be both deficient and prejudicial. 466 U.S. at 687. To be "deficient" an attorney must have made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To be "prejudicial" the counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

In determining whether counsel is deficient, courts review the case from the counsel's perspective at the time of representation. *Strickland*, 466 U.S. at 687. This type of review is required to eliminate the distorting effects of hindsight because it is "all too tempting for a defendant to second-guess counsel's assistance after conviction." *Id.* at 689. A convicted defendant making a claim of ineffective assistance must specifically identify the "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The Supreme Court has held that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Assuming Petitioner can overcome this strong presumption and prove his counsel was deficient, he must also prove that such deficient representation actually prejudiced his case. *United States v. Morrison*, 449 U.S. 361, 364–65 (1981). In nearly all situations *Strickland* places the burden on the defendant to affirmatively prove prejudice. "Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 687.

**ANALYSIS**

**1. Objective Standard of Reasonableness**

As mentioned above, the first element of a successful *Strickland* claim is demonstrating an attorney's actions and decisions fell below an objective standard of reasonableness. Petitioner contends Maciolek's strategy fell below this objective standard of reasonableness because he failed to pursue what Xiong labels as his "truth" defense. (ECF No. 7 at 5.) Petitioner's "truth" defense begins with the proposition that he, his mother (Mayneng Xiong), his girlfriend (Xee Vue), and his brother (Kongmeng Xiong), are innocent of arson and mail fraud charges. But as the government observes, the evidence concerning his mother's guilt was overwhelming, so much so that she pled guilty on advice of counsel and was sentenced to prison. Petitioner's mother was captured on video tape purchasing isopropyl alcohol bottles at the local Walmart hours before discovery of the arson. The evidence established without dispute that those same bottles, along with gasoline that she brought into the store, were then used as an accelerant to start the fire. Xee Vue likewise pled guilty to making false statements in an attempt to provide Petitioner an alibi. In light of this and other

4

evidence, Attorney Maciolek could not have, with a straight face, made the argument that Xiong now urges this Court to accept — that rival gang members were responsible for the arson.

In point of fact, however, Attorney Maciolek told the jury he did not know who set the store on fire. He also offered to the jury the very explanation for his repeated lies to investigators that he claims he was prevented from offering, namely, that he did not want to admit that he was really out driving without a valid driver's license and trying to find drugs for a friend when he said he was at home. Indeed, Attorney Maciolek was able to offer these explanations to the jury without having to call Petitioner as a witness, which would have exposed his criminal record and subjected him to vigorous cross examination regarding his inconsistent prior statements. Realizing this risk, Petitioner expressly waived his right to testify on his own behalf, and even now offers no reason or evidence that would suggest his testimony would have made a difference. In light of these considerations, Maciolek's decision not to pursue a "truth" defense is far from inadequate; it is actually quite reasonable.

Instead of pursuing Petitioner's "truth" defense, Attorney Maciolek's reasoned approach to the case was, in part, to not dispute the government's contention that Petitioner's mother, Mayneng Xiong, was responsible for the fire while attempting to distance Petitioner from involvement in the arson. Given the strong proof of Mayneng Xiong's involvement in the arson, this strategy was reasonable. It would have been ridiculous to contend, as Petitioner would urge, that unknown gang members were responsible for the fire. To this day, Petitioner fails to offer persuasive explanation why either he or his mother were targeted. Nor can he point to any person or specific group supposedly responsible for the arson. In fact, Petitioner cannot even overcome one of the most basic indications that the arson was an "inside" job, as the evidence shows there was no forced entry into

5

the grocery store.[1] Thus, ultimately, Petitioner fails to demonstrate Maciolek's decisions here were "egregious" errors of the kind necessary to demonstrate ineffective assistance of counsel. *Williams v. Lemmon*, 557 F.3d 534 (7th Cir. 2007). His strategy is much sounder than Petitioner's "truth" defense and was a reasonable course to pursue, especially in light of the serious problems that would have arisen from Petitioner's testimony.

Finally, while Attorney Maciolek did not pursue the defense in the exact form Petitioner now claims he should have, he did incorporate most of the major elements of Petitioner's concerns into his arguments. For example, he asserted Petitioner was "driving around with a suspended license to pick up my underage girlfriend who was out illegally drinking after I looked around but failed to find some marijuana for [a third party]." (ECF No. 12-2 .) This argument attempts to explain why Petitioner lied to investigators and why he was not at his residence the night before the fire. In sum, Attorney Maciolek argued much of the "truth" defense but did so with the benefit of not having to call Petitioner as a witness and expose him to a difficult cross-examination. I cannot conclude Maciolek's decisions in this regard were deficient; they did not fall below Strickland's objective standard of reasonableness and accordingly Petitioner's claim fails.

**2. Prejudice**

Furthermore, even assuming *arguendo* that Maciolek's representation was inadequate, Petitioner still cannot succeed on *Strickland's* prejudice prong, and both prongs are necessary to

---

[1]Despite Petitioner's arguments to the contrary, the proof at trial was overwhelming that there were no signs of forced entry to the building. All exterior doors and windows to the building were secure. (ECF No. 12-3 at 1–2.) The garage door was extensively damaged by fire and had fallen into the building. This door, according to Mayneng Xiong, could not be forced beyond six inches. (*Id.* at 4–5.) That door was also examined for pry marks but none were detected. (*Id.* at 6–7.)

6

prevail on a claim of ineffective assistance of counsel. To establish prejudice, Petitioner must demonstrate through *objective* evidence that there is a reasonable probability that the result of the proceedings would be different. *Strickland*, 466 at 493–94 (emphasis added).

Most problematically, Petitioner's "truth" defense is virtually silent as to his activities in the two hours leading up to discovery of the fire. That time period (between 10:23 pm to 11:51 pm) became especially pertinent at trial as cellular telephone tower records established Petitioner was utilizing a cellular tower consistent with him being at the scene of the arson. Despite this cellular telephone evidence, Petitioner had previously denied to police and to insurance investigators that he was near the store that evening. In his declaration submitted with his § 2255 motion and in a letter to his attorney explaining his whereabouts that evening, Petitioner instead only offers the statement he was "driving around" at that time. He makes no mention of where he was driving, nor does he offer any way to verify this claim. Petitioner's vagueness, especially when considered with the complete lack of supporting proof, indicates Petitioner would not have been likely to succeed at trial in convincing a jury of his alibi and instead would have likely even further damaged his credibility with them.

Finally, Petitioner tries to point to what he sees as the strength of his evidence on various elements of his case, including DNA evidence and the interpretation of cell tower data. But on both of these fronts, the jury heard conflicting testimony from the government and defense experts. The nuances now offered by Petitioner on how counsel should have approached various witnesses and evidence fall short of establishing a reasonable probability that the result would have been different; the jury was presented with these subtleties and made its credibility determinations accordingly. Petitioner has not pointed to any evidence that was not offered at trial that would have made a

difference. Simply wishing that the jury had come to a different conclusion about various witnesses and evidence does not mean Petitioner was "prejudiced" by Maciolek's strategic decisions. And as discussed above, Maciolek still managed to incorporate many of the important elements of Petitioner's "truth" defense into his trial strategy. This again suggests the result at trial would not have been any different and therefore Petitioner could not have been "prejudiced" by Maciolek's strategic choices. Petitioner's claim for ineffective assistance of counsel is therefore also denied on the ground that he has failed to prove prejudice in accordance with the second prong of *Strickland*.

**3. Need for an Evidentiary Hearing**

Finally, Petitioner requests an evidentiary hearing "to give the Court an opportunity to make a finding of fact on the matter in dispute." (ECF No. 7 at 94.) But if the record conclusively demonstrates that a petitioner is entitled to no relief on his § 2255 motion, a full evidentiary hearing is unnecessary. *See* Rule 8(a) Rules Governing Section 2255 Proceedings; *Menzer v. United States*, 200 F.3d 1000, 1005–1006 (7th Cir. 1999). When it "plainly appears from the facts of the motion and any annexed exhibits and the prior proceedings in the case" that the petitioner is not entitled to relief, the petition should be dismissed without a hearing. *Id.* (other citations omitted). The judge who presided over the initial case is in the best position to conclude whether an evidentiary hearing would provide any more information supporting the viability of the claim. *United States v. Li*, 648 F.3d 524, 532, (7th Cir. 2011). Such unnecessary evidentiary hearings "eliminate the chief virtues of the justice system — speed, economy, and finality." *Id.* (other citations omitted).

As discussed in the analysis of the "prejudice" prong of *Strickland*, even assuming Petitioner's factual allegations are true, they do not entitle him to relief. Petitioner concedes nearly all these claims involve strategic trial decisions that were made by Attorney Maciolek. This Court had the benefit of presiding over the original trial and hearing the arguments of counsel; therefore facts beyond this existing record are not needed to decide the case. I therefore agree with the government that no evidentiary hearing is needed. As no evidentiary hearing is granted, the government's request for recognition of Petitioner's implied consent to waive confidentiality (ECF No. 12 at 10–12) is DENIED AS MOOT.

**CONCLUSION**

Petitioner has alleged facts that, even if true, would be insufficient to show that his trial counsel's representation was either deficient or prejudicial. Accordingly, Petitioner's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence (ECF No.1) is DENIED.

Dated this __3rd__ day of May, 2012.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge